**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2005-CA-01056-SCT**

*ROY R. GATLIN AND NELDA T. GATLIN*

*v.*

*SANDERSON FARMS, INC.*

DATE OF JUDGMENT:                          11/23/2004
TRIAL JUDGE:                               HON. BILLY JOE LANDRUM
COURT FROM WHICH APPEALED:                 JONES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:                  JOHN DUDLEY BUTLER
                                            LAWRENCE E. ABERNATHY, III
ATTORNEYS FOR APPELLEE:                    RYAN JEFFREY MITCHELL
                                           RICHARD O. BURSON
NATURE OF THE CASE:                        CIVIL - CONTRACT
DISPOSITION:                               AFFIRMED - 02/08/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from a contract between a chicken processor, Sanderson Farms Inc. (Sanderson), and a chicken grower, Roy Gatlin, for Gatlin to grow broiler chickens. After Gatlin admitted that he had breached the terms of the contract, Sanderson immediately terminated the contract. Gatlin filed suit and the jury returned a verdict in favor of Sanderson. Subsequently, Gatlin filed this appeal. Because the jury properly found that Gatlin was in breach of contract and that Sanderson rightfully terminated the contract, we affirm the decision of the trial court.

**FACTS**

¶2.    Sanderson and Gatlin entered into a contract whereby Sanderson would deliver "baby broiler chicks" to Gatlin to raise in chicken houses on his property.  Gatlin would grow and care for the flocks in accordance with Sanderson standards until the chickens reached marketable weight.  The contract further set out the manner in which all dead birds would be disposed of and that all disposal would be in compliance with federal, state and local laws and regulations.  In 1997, the Gatlin farm had a high mortality rate apparently due to e-coli, "spiking disease," and other infections.  Although there is no suggestion that Gatlin was to blame for the high mortality rate, evidence was presented that Gatlin failed to properly dispose of the bird carcasses.  After receiving complaints of illegal disposal, a Sanderson inspector found the skeletal remains and feathers of numerous chickens scattered in a thicket on Gatlin's property.  Gatlin admitted that he dumped the carcasses in violation of both his contract and the regulations of the Mississippi Board of Animal Health.  Sanderson immediately terminated Gatlin's contract.  Subsequently, Gatlin sued Sanderson for breach of contract in Jones County Circuit Court.  The jury returned a verdict in favor of Sanderson and Gatlin perfected this appeal.

**DISCUSSION**

¶3.    We have implemented a three-tiered process for contract interpretation.  *Pursue Energy Corp. V. Perkins*, 558 So.2d 349, 351-53 (Miss. 1990).  First we look to the "four corners" of the contract and at the language the parties used in expressing their agreement.  *Id.* at 352.  "When an instrument's substance is determined to be clear or unambiguous, the

2

parties' intent must be effectuated." ***Id.*** Where the instrument is not so clear, we "will, if possible, harmonize the provisions in accord with the parties' apparent intent." ***Id.*** If we are unable to determine the parties' intent from examining the four corners of the instrument, we may apply the canons of contract construction. ***Id.*** If the intent is still unclear, we may then consider parol or extrinsic evidence. ***Id.***

¶4.    Gatlin asserts that Sanderson breached its contract with Gatlin by immediately terminating him for allegedly violating the law when he had not been found in violation by the Board of Animal Health. Further, Gatlin argues that Sanderson had a duty to exhaust other contractual remedies involving Farm Management Deficiencies pursuant to the Broiler Growing Program. We disagree.

¶5.    The contract or Broiler Production Agreement (Agreement) in this matter specifically states the terms of the contract and the parties involved. The Agreement clearly sets out the manner for disposing of dead birds:

> 9. **BIRD DISPOSAL**. The Grower, at his or her expense, agrees to dispose of all dead birds and used litter in a timely manner in compliance with all federal, state and local laws and regulations and the Broiler Growing Program. In the event of a catastrophic loss, Sanderson will assist the Grower in disposing of dead birds.

¶6.    The Agreement also clearly states the grounds for termination, including, in applicable part:

> 23. **IMMEDIATE TERMINATION**. This Agreement may be immediately terminated by Sanderson at any time upon written notice for any of the following reasons:
> > . . .

3

c. The Grower fails to comply with applicable federal, state, or local laws or regulations. . . .

The Agreement further provides:

35. **COMPLETE AGREEMENT**. The Grower acknowledges that this Agreement is the complete understanding between the parties with regard to the subject matter hereof and no representation or promise inconsistent with any provisions of the Agreement has been made to the Grower by any employee of Sanderson. . . . Although the Broiler Growing Program attached hereto is an integral document in the relationship between the Grower and Sanderson, in the event any provision of this Agreement conflicts with or is inconsistent with any provisions of the Broiler Growing Program, the provisions of this Agreement will control.

¶7. Gatlin signed the Agreement indicating that he "**DOES HEREBY DECLARE THAT THE TERMS OF THIS AGREEMENT HAVE BEEN COMPLETELY READ AND FULLY UNDERSTOOD.**"

¶8. Attached to the Agreement is a document entitled "Broiler Growing Program – Overview," which includes provisions on Culling and Dead Bird Disposal and Evaluation Procedures, including Farm Management Deficiencies. However, there are no such provisions in the Broiler Production Agreement. Those provisions are included only in the Broiler Growing Program. More importantly, we reiterate that the Broiler Production Agreement clearly states: "Although the Broiler Growing Program attached hereto is an integral document in the relationship between the Grower and Sanderson, ***in the event any provision of this Agreement conflicts with or is inconsistent with any provisions of the Broiler Growing Program, the provisions of this Agreement will control***." (Emphasis added).

4

¶9. The contract clearly states that the Agreement is controlling. That Agreement includes the language set out previously herein as to the disposal of dead birds and the grounds for termination. There is no ambiguity in the Agreement. *See **Pursue Energy Corp.***, 558 So.2d at 352 (Miss. 1990). The intent of the parties is clear. The language of the contract is not subject to more than one fair reading. Therefore, Sanderson had the right to immediately terminate the contract.

¶10. Gatlin argues that Sanderson had to invoke some disciplinary procedure and that there had to be a finding of a violation by the State Board of Animal Health before Sanderson could successfully assert that he had breached the contract. Such an argument, absent a specific contractual provision requiring that the State Board of Animal Health has investigated the matter and found the grower to be in violation, is meritless. The Agreement clearly states the manner for bird disposal and that the "Agreement may be immediately terminated by Sanderson" if the "Grower fails to comply with applicable federal, state, or local laws or regulations." While it may be unfortunate for Gatlin, the contract does not include any language stating that only the Mississippi Board of Animal Health or some other administrative, regulatory or law enforcement agency, can determine whether the grower has failed to comply with applicable federal, state, or local laws or regulations. In fact, the Agreement doesn't even use the terms "violated" or "violation" as used by Gatlin, but rather the Agreement states "fails to comply."

¶11. Regulation 13 of the Mississippi Board of Animal Health states: "No dead poultry, carcasses, offal or any parts of any dead poultry shall be disposed of by throwing or leaving

5

along public roads, in fields or woods or in any place; but must be properly disposed of in an approved incinerator, compost system, or pit." Witnesses saw the carcasses illegally dumped on Gatlin's property. More importantly, Gatlin admitted that he illegally disposed of the carcasses, but argues that Sanderson should not be able to hold that against him because he was never cited by the Mississippi Board of Animal Health. Clearly, such evidence supported Sanderson in exercising the right to determine that Gatlin breached the contract. Further, under the terms of the contract, such evidence gave Sanderson the right to immediately terminate the contract. To suggest otherwise, particularly in this day of increased health and safety awareness, is not only irresponsible, but absurd.

¶12.    Gatlin confuses Sanderson's finding that he had breached the terms of the contract with Sanderson finding him in violation of a state regulation and imposing the appropriate punishment for said violation. Sanderson did not issue a citation, levy a fine or impose any other punishment for the illegal disposal of dead poultry pursuant to Regulation 13 of the Mississippi Board of Animal Health. Sanderson was not acting in the capacity of the Mississippi Board of Animal Health. Instead, Sanderson was acting in the capacity of a party to the contract, and, as a party to the contract, Sanderson had every right to determine that the other party was in violation of the terms of the contract.

¶13.    Accordingly, we find that the jury properly found that Gatlin was in breach of contract and that Sanderson properly terminated the contract. Further, we find the remaining issues raised by Gatlin to be without merit. The verdict of the jury and the judgment of the trial court are affirmed.

¶14.   **AFFIRMED.**

      **SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**